27 167
6ap245

TEUNIS P. OSTERHOUT, RESPONDENT, v. THOMAS HYLAND AND OTHERS, APPELLANTS.

SAME v. JOHN RIGNEY AND OTHERS, APPELLANTS.

SAME v. OWEN TRODDEN AND OTHERS, APPELLANTS.

SAME v. DENNIS MURPHY AND OTHERS, APPELLANTS.

SAME v. PATRICK BUTLER AND OTHERS, APPELLANTS.

SAME v. CORNELIUS BRACKETT AND OTHERS, APPELLANTS.

*Board of town auditors — cannot allow a claim disallowed by a former board — a taxpayer may restrain the payment of a claim so audited — 1872, chap. 161, as amended by 1879, chap. 526.*

In November, 1877, one Hyland, who had been a constable of the town of Kingston for the year ending in March, 1877, presented to the board of town auditors a bill against the town for the sum of $527.50. The board allowed $166.66 of the bill and disallowed the balance, $360.84. In November, 1878, he presented a bill for the $360.84 disallowed by the former board to the new board, which allowed $200 thereof and disallowed the residue.

*Held,* that the jurisdiction of the board of town auditors only extended to the audit and settlement of unaudited and open town charges, and that it had no authority to reopen and decide a case which had been already decided upon its merits by its predecessor.

That as its reaudit of the claim was void for want of jurisdiction, a taxpayer of the town was entitled to bring an action under chapter 161 of 1872, as amended by chapter 526 of 1879, against the owner of the claim, the supervisor of the town and the board of supervisors to restrain the payment of the claim.

That the payment of a claim might be so restrained when it appeared that there was included in the audit the whole or a portion of an old bill which had been previously presented and disallowed, though the exact amount so included could not be determined.

APPEALS from judgments in favor of the plaintiff, entered **upon the report** of a referee.

*F. L. Westbrook,* for the appellants.

*M. Schoonmaker* and *S. L. Stebbins,* for the respondent.

LANDON, J.:

Of the six cases argued together the case of Hyland presents the questions material to be considered, in the simplest form. Hyland was a constable of the town of Kingston for the year ending March, 1877. In November, 1877, he presented an account against the town to its board of town auditors in the sum of $527.50. The board allowed $166.66 and disallowed $360.84. In November, 1878, he presented an account against the town for $360.84 to the board of town auditors and the board allowed $200 and disallowed the balance of it. The bill thus presented was the same which had been disallowed the previous year.

The board of town auditors, in November, 1878, included this item of $200 in their certificate of the accounts audited by them, and which they delivered to the supervisor of the town who laid the same before the board of supervisors of the county of Ulster at their annual meeting in November, 1878. Before action was taken thereon by the supervisors this suit was begun; meanwhile Hyland had assigned the claim for the $200 audited in his favor to the defendant the Kingston National Bank.

The board of town auditors are not made defendants, but the action is against Hyland, and the bank, as assignee of his claim, the supervisor of the town of Kingston, and the board of supervisors of the county. The judgment appealed from adjudges the audit "vacated, annulled and set aside," and enjoins the payment of the amount to or by any defendant.

The supposed authority for this action is chapter 161, Laws 1872, being "an act for the protection of taxpayers against the frauds, embezzlements and wrongful acts of public officers and agents." It is proper to remark that no fraud or wrongful act is alleged in the complaint against the board of town auditors, none is found by the learned referee. The act in terms creates no new duty or

liability. It does not in anywise declare that to be unlawful which had theretofore been lawful, but it gives to a taxpayer the right to prosecute and maintain actions against the officers' of any town, county or municipal corporation, "to prevent waste or injury to any property, funds or estate" thereof.

In *Ayers* v. *Lawrence* (59 N. Y., 192), the Court of Appeals, by a divided court, held that under its authorization a taxpayer could maintain an action against commissioners appointed under the general town bonding law, to restrain them from issuing bonds upon the credit of the town in aid of a railroad corporation; the alleged cause for the injunction being that the conditions prescribed by the act as precedent to the existence or creation of the authority to issue the bonds had not been duly complied with. That action was equitable in its character and sought preventive relief by injunction. But it sought it against ministerial officers. It is easy to see that if a ministerial officer, like a commissioner to issue bonds, having ostensible but not real authority, is not stayed in the threatened exercise of unauthorized power, irreparable injury is the result. The act of 1872 created a party plaintiff who could invoke the remedy. In *Newton* v. *Keech* (9 Hun, 355), also brought under this act, a collector was restrained from paying to the railroad commissioner the money collected by tax to pay the interest upon such bonds, the Court of Appeals having declared the bonds invalid. The collector is simply a ministerial officer. In *Latham* v. *Richards* (12 Hun, 360), the trustees of a village were restrained at the suit of a taxpayer from making an unauthorized purchase of land for a cemetery, and thereby incurring a debt forbidden by law. In the latter case regard being had to the grounds upon which the court placed its decision, the trustees, as to the act intended, were not even ministerial officers. They were destitute of color of right.

It may be conceded, however. and such no doubt is the intent and effect of the act of 1872, that it gives to the taxpayer the power to bring and maintain any action appropriate to be brought and maintained under the facts of each case, against town, county and municipal officers and agents, "to prevent waste or injury to the property, funds or estate" of the town, county or municipal corporation; but it does not confound remedies as they have heretofore been administered. This new plaintiff has a *locus standi* in court

as the champion of the public, but he brings with him no new weapons; justice must be administered at his suit, according to his success in showing that he is entitled to any of the remedies by which the courts are wont to redress wrongs. This construction is not at variance with that given by the court in *Ayers* v. *Lawrence*. The learned judge who delivered the opinion in that case observes that the act must have a benign and liberal interpretation that it may be effective in preventing the gross frauds which are sometimes perpetrated by public officers, chief among which he instances the unauthorized issue of bonds, by which the taxation of the future is mortgaged. He says: "The language of the body of the law is sufficiently comprehensive to embrace every wrong by which taxpayers may be prejudiced." Again, "the act was passed with a view to remedy the felt defect in the law and give the taxpayer a concurrent action with the corporation for the *prevention* or *correction* of the wrongs mentioned in it." This certainly is no authority for an action in equity when there is an adequate remedy at law. It is rather a recognition of the fact that the wrong threatened by the ministerial officer may be *prevented*, and the error done by the judicial officer *corrected*. Under the interpretation given the act by the Court of Appeals, the taxpayer may, by appropriate action, prevent the wrong of the one and correct the error of the other.

A bill in equity, however, is not the appropriate remedy to correct the errors of boards and inferior tribunals acting judicially. (*Guest* v. *City of Brooklyn*, 69 N. Y., 506.)

Their decisions are in the nature of judgments, and like judgments should be reviewed by bringing into the appellate court the very proceeding itself; so that if it be found erroneous, it can be corrected or vacated, and if found to be right, it can be relegated to its proper function, and thenceforth be above the reach of successful attack. Public policy requires that the judgments of the tribunals constituted by the government shall not be attacked collaterally. There must be an end of strife, and that there may be an end, speedy, authoritative and just, the methods of review of proceedings, judicial in their nature, must be in the proceeding itself, and exclusive of every other. In case, however, of a lack of jurisdiction in the body to make the decision, the decision may be attacked wherever it is asserted, for if there was no authorized body or court, there

can be no authorized decision. (*Lange* v. *Benedict*, 73 N. Y., 12, 25.)

These elementary propositions lead to the conclusion, that to entitle the plaintiff to maintain this action, in the absence of fraud, it must be shown that the board of town auditors had no jurisdiction of the subject-matter, that is, had no lawful power to determine whether the bill should be allowed or not. (*Hunt* v. *Hunt*, 72 N. Y., 217, 229.) And further, that irreparable injury is or is to be the result.

The board of town auditors was created by chapter 305, Laws 1840 (3 Edms. Stat., 302), "for the purpose of auditing and allowing the accounts of all charges and claims payable by their respective towns."

1 Revised Statutes, 358, section 2, is as follows: "The following shall be deemed town charges:

1. The compensation of town officers for services rendered for their respective towns.

2. The contingent expenses necessarily incurred for the use and benefit of the town.

3. The moneys authorized to be raised by the vote of a town meeting for any town purpose; and

4. Every sum directed by law to be raised for any town purpose."

The defendant, Hyland, presented his bill to the board. The bill itself was not produced in evidence upon this trial, but from the very meager evidence with respect to it, it appears that it was made out in items and was for his services as a constable, and was fortified in whole or in part by the processes which he had served. It may be remarked here, that since the presumption is that public officers do their duty in accordance with law, and since the plaintiff has by this action attempted to rebut that assumption, the burden rested upon him to rebut it by proof.

The defendants had the certificates of the town auditors in their possession and as their warrants. These were their all-sufficient protection until the plaintiff by his affirmative evidence overthrew and destroyed them. The cases cited by the counsel for the plaintiff, to the effect that the jurisdiction of the court or judge of limited jurisdiction pronouncing the judgment must affirmatively appear upon the record in order to sustain its validity, apply to judgments

which are either under review upon appeal or are affirmatively wielded in derogation of another's right. One may hold questionable judgments upon the same footing that he holds other property, for whatever he thinks they are worth. He may not be called upon at the pleasure of every challenger, and upon peril of their destruction, to show his own right or their validity. His title to them and their immunity from collateral attack are secure until he attempts or threatens to assert them as an aggressive force. Whoever then assails them must prove the facts that deprive them of the right to exist. The cases relating to clouds upon title may be instanced in support of these propositions. This original bill could not be found for production upon the trial. The defendants were not its lawful custodians, and its non-production is not traced to Hyland or to his assignees. The presumption, therefore, is that this bill was regular in form. The first duty of the board was to determine whether it was a town charge within any one of the above statutory definitions. If it was then the board had jurisdiction of the subject-matter. The determination of this question within the rules laid down in *Hunt* v. *Hunt* (72 N. Y., 229) did not depend upon the question whether this particular bill, in view of its special and peculiar history, ought to be allowed or not, but whether such a bill in general may be considered by the board and allowed or disallowed as its special and peculiar history shall require. Bills of constables for certain services are town charges. When once finally settled and allowed or disallowed upon the merits there is no occasion to do it over again. That allowance or disallowance is in the nature of a judgment and can no more be reopened and decided some other way than a judgment can. (*People* v. *Stocking*, 50 Barb., 573; *People ex rel. Smith* v. *Town Auditors of Delhi*, 5 Hun, 647; *People ex rel. Thomson* v. *Supervisors*, 35 Barb., 408.) If it appeared upon the face of this bill, or in the evidence given upon the examination of it, that the bill had been disallowed upon its merits then the board did not have jurisdiction of it, for the board has jurisdiction to audit and allow unaudited and open accounts. The statute does not give the board jurisdiction to reopen and otherwise decide a case already decided. It gives jurisdiction to audit town charges not already audited.

The conclusion, is if this bill had been disallowed the previous

year then this board had no jurisdiction of it; if it had not, this board had jurisdiction of it.

The burden rested upon the plaintiff upon this trial to prove affirmatively that it had been disallowed upon its merits the previous year. The referee finds, and his finding is supported by the evidence, that the bill of Hyland was the same which had been passed upon and disallowed by the previous board. The evidence is to the effect that this fact was known to this board. The presumption upon the evidence, and in the total absence of any effort to prove the contrary, is that the bill was disallowed upon the merits. (*Stearns* v. *Admr. of Stearns*, 32 Vt., 678.) If the fact had been suppressed it would afford evidence of fraud.

It follows that the judgment in the case of Hyland must be affirmed, with costs.

The cases of Dennis Murphy, Cornelius Brackett, Owen Trodden and Patrick Butler stand upon the same state of facts in this respect. The judgments in these cases must also be affirmed, with costs.

The case of John Rigney presents the same question with respect to part of the audit. He was an overseer of the poor. His entire bill was, as claimed, $4,325.75. Of this sum, $1,100 was for an old bill previously presented and disallowed. The rest was for expenses and services in support of the poor. The board deducted $600 from the entire bill, and allowed the balance, $3,725.75. It may be that the whole of the old bill was allowed, and the deduction made from the new items. If this case were in the nature of an appeal from the audit, it would be proper to send the case back to the auditors, with instructions to strike out all of the old bill and audit the balance at such sum as the board should find to be just. But we have shown that this action is not in the nature of an appeal, but an action to prevent the allowance and payment of a claim which the board had no jurisdiction to audit, or, as we have held in the case of this plaintiff against *The Supervisors*, in which the audit was fraudulent in part or in whole. We think some allowance should have been made to Rigney. The referee rejected his entire claim because the good could not well be separated from the bad, and because the account, which it might be just in itself to audit, was irregularly incurred and irregularly audited. We have

no doubt the account was irregularly incurred and irregularly audited. Since this audit was made, the town of Kingston has been divided, and some parts of it set off to other towns. Unless Rigney can obtain relief in this action, it is difficult to see how he can escape unjust loss.

The town had the benefit of large expenditures made by him for the relief of the poor. These expenditures were made in good faith. This is an equitable action to prevent "waste or injury to the property, funds or estate" of the town, not by the rigid application of a technical rule to impose "waste or injury" upon the estate of this defendant. The expenses actually incurred and the services actually rendered by the defendant in the administration of his official duty should be, unless fraud shall be established, ascertained and allowed him. The provisions of the acts applicable to the towns in Ulster county for the relief of indigent persons (chap. 334, Laws 1845; chap. 245, Laws 1846), prescribe regulations which should have been pursued, but they do not forbid the audit and allowance to the defendant of the sum which the town ought in good faith to pay him.

The judgment as to Rigney is reversed, a new trial ordered, the reference discharged, costs to abide event, unless the defendants stipulate to deduct $1,100 from the amount of the audit, in which case judgment is directed that the audit be vacated as to $1,100 thereof, and stand valid as to the balance, without costs in this court.

BOARDMAN, J.:

I think all the judgments should be affirmed, with costs.

LEARNED, P. J., concurs with BOARDMAN, J., and adds: "I don't think we can adjust Rigney's claim; that is too much to ask. Ought the bill as audited to be paid? If not, the judgment ought to be affirmed."

Judgments affirmed, with costs.